UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | | |
|---|---|---|---|
| MARIO COMMON, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | Nos. | 1:12-CR-82-HSM-SKL-1 |
| v. | ) | | 1:15-CV-173-HSM |
| | ) | | |
| UNITED STATES OF AMERICA, | ) | | Judge Mattice |
| | ) | | |
| Respondent. | ) | | |

## MEMORANDUM OPINION

This case is before the Court upon a pro se motion to vacate, set aside, or correct sentence

pursuant to 28 U.S.C. § 2255 [Doc. 42] filed by Mario Common ("Petitioner"). Petitioner also has

filed two identical supplements to his § 2255 motion [Docs. 51, 52] challenging his enhanced

sentence as an armed career criminal under the Armed Career Criminal Act ("ACCA"), 18 U.S.C.

§ 924(e), pursuant to *Johnson v. United States*, 135 S. Ct. 2551 (2015).[1] For the following reasons,

Petitioner's § 2255 motion [Doc. 42], as supplemented [Docs. 51, 52], will be **DENIED**.

## I.    PROCEDURAL HISTORY

### A.    Underlying Criminal Proceedings and Direct Review

On June 26, 2012, Petitioner was charged in a one-count indictment with possession of a

firearm by a convicted felon [Doc. 3]. At the conclusion of a two-day trial, a jury found Petitioner

guilty [Doc. 24]. A presentence investigation report ("PSIR") identified three previous convictions

for a violent felony, committed on occasions different from one another, that qualified Petitioner

---

[1]    The Supreme Court has determined that *Johnson*, which invalidated the residual clause of the ACCA as unconstitutionally vague, announced a new "substantive rule that has retroactive effect in cases on collateral review." *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016); *see also In re Watkins*, 810 F.3d 375, 381-85 (6th Cir. 2015).

an armed career criminal under the ACCA: two convictions for aggravated robbery and one for aggravated assault, all under Tennessee law [PSIR ¶¶ 30, 31]. As an armed career criminal, Petitioner was subject to a statutory mandatory minimum incarceration sentence of 15 years to a maximum of life and his advisory guideline sentencing range under the United States Sentencing Guidelines ("USSG") was 262 to 327 months [PSIR ¶¶ 63, 64].

On May 20, 2013, Petitioner was sentenced to a term of imprisonment of 240 months to be followed by a term of supervised release of 4 years [Doc. 30 at 2–3]. On April 21, 2014, the Sixth Circuit Court of Appeals affirmed Petitioner's conviction [Doc. 38]. Petitioner did not file a petition for a writ of certiorari.

### B. Post-Conviction Proceedings

On July 6, 2015, Petitioner filed a pro se § 2255 motion raising three grounds for relief: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; and (3) a due process violation arising from the Sixth Circuit's alleged failure to follow Supreme Court precedent [Doc. 42]. The government filed a response in opposition [Doc. 46] to the § 2255 motion, and Petitioner filed a reply [Doc. 48].

On July 25, 2016, Petitioner filed a "supplemental pleading" seeking to add a claim challenging his status as an armed career criminal in light of *Johnson* [Doc. 51], and the government has filed a response in opposition to the supplemental claim [Doc. 53].

## II. FACTUAL BACKGROUND

The Sixth Circuit Court of Appeals succinctly summarized the facts of this case in its opinion on direct appeal as follows:

> On April 4, 2012, in the early hours of the morning, four Chattanooga police officers responded to a 911 call for a domestic disorder involving a weapon. The officers were directed to an address on Newton Street, near its intersection with

North Orchard Knob. The officers knew this neighborhood in East Chattanooga as a high-crime area with significant gun violence. Upon arriving at the intersection, they parked their squad cars and proceeded on foot up Newton Street.

When they turned onto Newton Street, the officers spotted a man in the middle of the street with what appeared to be a pistol in his hand. He was pointing the pistol at a woman or a small group of individuals. Officer Nelson testified that he saw the silhouette of a pistol and Officers Bramlett and Winbush both recalled that they saw a small silver gun in the man's hand. When the woman saw the police arriving, she shouted to tell them that the man had a gun. The officers instructed everybody to get on the ground. Instead of immediately complying, the man walked toward the house to the edge of the yard and then tossed the object he was holding. He then walked back down the driveway while shouting that he did not have anything, and lay on the ground. He was taken into custody and later was identified as defendant Mario Common.

While one of the officers took Common into custody, the others searched the yard for the object they had seen him toss away. They recovered a small, silver gun in the grass behind the house. The police did not take photographs of the gun before removing it, and the officers' testimony varies regarding the precise location of the gun. Officer Nelson testified that he and Officer Young found the gun "[i]n the back of that residence . . . just at the woodline." The distance from the middle of Newton Street, where the officers first observed Common, to the tree line at the back of the property was 156 feet. However, Officers Bramlett and Winbush testified that the gun was recovered from the backyard, about ten feet away from the driveway. Officer Winbush testified that when he found the gun, "there was a lot of condensation on the ground, but the weapon didn't appear to have any kind of moisture on it. There were no indentions into the ground where it was, and it didn't look like it had been there any period of time."

*United States v. Common*, 563 F. App'x 429, 430–31(6th Cir. 2014) (citations to record omitted).

## III.    ANALYSIS

### A.    Hearing

Pursuant to Rule 8 of the Rules Governing Section 2255 Proceedings, the Court, after a review of the answer, the transcripts and records of prior proceedings and any other submitted materials, is to determine whether an evidentiary hearing is required.  A district court must hold an evidentiary hearing unless the motion, files, and record conclusively show that the petitioner is

entitled to no relief.  28 U.S.C. § 2255(b); *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999).

Here, upon review of the motions, memoranda, responses and the record, the Court finds that an evidentiary hearing is not required because the record conclusively shows that Petitioner is not entitled to relief as a matter of law.  *See Bryan v. United States*, 721 F.2d 572, 577 (6th Cir. 1983) (evidentiary hearing on motion to vacate sentence is not required to resolve purely legal issues).

### B.     Standard of Review

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid."  *McPhearson v. United States*, 675 F.3d 553, 558–59 (6th Cir. 2012) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)).  He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process."  *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

### C.     Discussion

#### 1.     Ineffective Assistance—Trial Counsel

Petitioner's first claim is that he was denied the effective assistance of trial counsel.  This claim has three subclaims of ineffective assistance based on: (1) counsel's failure to obtain DNA testing [Doc. 42 pp. 18–21]; (2) counsel's failure to object to testimony from three officers as to a statement they heard upon arrival at the scene of the offense [*Id*. pp. 21–24] ; and (3) counsel's failure to call two witnesses  [*Id*. pp. 24–26].

## 2. Applicable Law

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. Under the Sixth Amendment, a defendant has a constitutional right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard for proving ineffective assistance of counsel, a defendant must meet a two-pronged test: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id*.

Under the first prong of the test, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The reasonableness of counsel's performance must be evaluated "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689).

The second prong requires the petitioner to show that counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. In order to prevail on a claim of prejudice, a petitioner must show "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. While both prongs must be established to meet a

petitioner's burden, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id*. at 697.

### a.　　Failure to Obtain DNA Testing

Petitioner's first subclaim alleges that trial counsel was ineffective for failing to have the firearm tested for the presence of DNA [Doc. 42 pp. 18–21]. He asserts that the lack of his DNA on the weapon would have been his "most powerful evidence" and that testing also may have shown the presence of the DNA of others [*Id*. pp. 19, 21]. The government argues that counsel's decision not to seek DNA testing was a sound strategic decision that should not be second-guessed [Doc. 46 pp. 5–7]. Upon due consideration, the Court finds that Petitioner is not entitled to relief on this claim.

"Under *Strickland*, "'counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" *Hill v. Mitchell*, 842 F.3d 910, 939 (6th Cir. 2016) (*quoting Strickland*, 466 U.S. at 691). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91.

It is a "longstanding and sound principle that matters of trial strategy are left to counsel's discretion." *Dixon v. Houk*, 737 F.3d 1003, 1012 (6th Cir. 2013). Here, it is clear from the record that counsel's defense strategy was that the officers jumped to the conclusion that the weapon was Petitioner's without conducting a thorough investigation, including a failure to obtain DNA testing. In her opening statement, counsel emphasized the fact that the officers did not fingerprint the gun or check it for DNA [Doc. 33 p. 9]. She also cross-examined the officers about

investigative techniques they could have pursued, but did not, including DNA testing [*Id*. pp. 21–22; 33–35; 37; 49–50; 52–53; 64–66; 84].

Trial counsel's tactical decision to attack the lack of thoroughness of the officers' investigation and not to do their investigation for them by seeking DNA on her own cannot be said to be unreasonable. *See, e.g., Skinner v. Quarterman*, 528 F.3d 336, 341–42 (5th Cir. 2008) (conducting own DNA test would have deprived defense of its primary argument at trial that the government conducted a shoddy investigation, and, not knowing what DNA testing would have uncovered, a jury might have found reasonable doubt in such uncertainty); *see also Hall v. United States*, 41 F. App'x 743, 745 (6th Cir. 2002) (counsel's alleged error in not obtaining DNA test involved strategic decision that did not rise to level of viable Sixth Amendment claim); *Stockman v. Berghuis*, No. 2:10-CV-14860, 2013 WL 6885121 * 8 (E.D. Mich. Dec. 31, 2013) *aff'd* 627 F. App'x 470 (6th Cir. 2015) (counsel's decision to focus on absence of physical findings to create doubt, in lieu of having physical evidence tested for DNA, was a valid strategic decision defeating ineffective assistance of counsel claim).

Moreover, even assuming without finding that the failure to seek DNA testing was deficient under *Strickland*, Petitioner can show no prejudice from counsel's failure to do so, as he fails to explain how the result of the trial would have been different. Petitioner provides no evidence to support his assertion that DNA testing would have established that he did not, or that someone else did, touch the weapon. In any event, it is "possible for a person to possess a firearm without depositing DNA material on it," *United States v. Miller*, 621 F.3d 723, 730 (8th Cir. 2010), and therefore "DNA testing would not have been dispositive of whether [petitioner] handled the gun," *United States v. Roberts*, 417 F. App'x 812, 818 (10th Cir. 2011).

In addition, Petitioner does not indicate how DNA results would have negated the first-hand observances of the officers. All three officers testified that they saw Petitioner with a weapon in his possession and a weapon was recovered on the ground near where Petitioner is observed to have tossed it. The jury clearly found this testimony to be credible. Based on the evidence adduced at trial, the Court is satisfied that there is no reasonable probability that the jury would have rendered a different verdict regardless of DNA results. *See, e.g., District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 62 (2009) ("Where there is enough other incriminating evidence and an explanation for the DNA result, science alone cannot prove a prisoner innocent.")

Accordingly, because Petitioner can show neither deficient performance nor prejudice arising from trial counsel's decision not to seek DNA testing, Petitioner is not entitled to relief on this ineffective assistance of counsel claim.

### b.    Failure to Object to Testimony

Petitioner's second subclaim alleges that trial counsel was ineffective in failing to object on Confrontation Clause grounds to the officers' testimony that the female victim, Lashundra Brown, shouted "he's got a gun" after their arrival at the crime scene [Doc. 42 pp. 21–24]. This argument is foreclosed by the Sixth Circuit's decision affirming Petitioner's conviction.

On direct appeal, the Sixth Circuit explicitly found that the Confrontation Clause was not violated by the officers' testimony because Brown's statements after the officers arrived were nontestimonial in nature. *Common*, 563 F. App'x at 435 n. 2. Rather, like similar statements made during the 911 call, Brown's statements at the scene "were made to assist the police in responding to a dangerous situation, namely a man in possession of a gun," while facing an ongoing emergency. *Common*, 563 F. App'x at 434–35. Moreover, as with the 911 call, the substantive

truth of Brown's statement that "he's got a gun" was not necessary to the government's case because other testimony established that Petitioner was in possession of a firearm, including the fact that each of the testifying officers independently described having seen a gun or pistol in Petitioner's hand. *Common*, 563 F. App'x at 435 (*citing United States v. Savoires*, 430 F.3d 376, 382 (6th Cir. 2005)).

As the Sixth Circuit already has determined that the officers' testimony did not violate the Confrontation Clause, Petitioner can show no prejudice from counsel's failure to object to that testimony on those grounds. A § 2255 motion cannot be used to relitigate issues that were denied on direct appeal absent a showing of highly exceptional circumstances, or an intervening change in the law. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996). Such circumstances are not present here.

Thus, because Petitioner cannot establish prejudice from counsel's failure to make a meritless objection, he is not entitled to relief on this ineffective assistance claim.

### c.    Failure to Call Witnesses

Petitioner's third subclaim alleges that trial counsel was ineffective in failing to subpoena the 911 dispatcher and Lashundra Brown [Doc. 42 pp. 24–26]. Petitioner asserts that Brown would have testified that she never said "he's got a gun" but instead said "here he comes" [*Id*. p. 25]. He also asserts that "counsel should have put the dispatcher on the stand, played the call and got the dispatcher to admit that the woman on the call never told her there was a man with a gun" [*Id*. p. 26]. This claim also lacks merit.

Counsel traditionally enjoys "discretion over deciding which witnesses to call and how to examine them." *Carter v. Mitchell*, 829 F.3d 455, 471 (6th Cir.2016) (citation omitted). *Accord Rayborn v. United States*, 489 Fed.Appx. 871, 878 (6th Cir. 2012) ("[w]hether to call a witness

and how to conduct a witness' testimony are classic questions of trial strategy that merit *Strickland* deference").

Here, there is no indication that trial counsel's failure to call either of the two witnesses caused Petitioner to suffer any prejudice. First, Petitioner has provided no affidavit or sworn statement from either proposed witness regarding the testimony either might have provided at trial. The proponent of a § 2255 motion has the burden to show he is entitled to relief. *Potter v. United States*, 887 F.3d 785, 787–88 (6th Cir. 2018). Here, Petitioner's self-serving assertions that Brown would have denied saying "he's got a gun" and that the 911 dispatcher would have "admitted" that Brown never told her there was a man with a gun are insufficient to establish that they actually would have testified as Petitioner now speculates they would have.

Moreover, even if Brown and the 911 dispatcher would have testified as Petitioner asserts, that testimony would not have called into question other evidence supporting his conviction. Initially, the 911 calls in fact were played to the jury at trial which allowed the jurors to make up their own minds as to whether the caller told the dispatcher that there was a man with a gun. More significantly, however, each of the testifying officers independently described having seen a gun or pistol in Petitioner's hand and observed him toss what appeared to be a weapon in the direction the weapon actually was found. *See, e.g., Fitchett v. Perry*, 644 F. App'x 485, 493 (6th Cir. 2016) (no prejudice from failure to call witnesses because, even if witnesses had testified as defendant asserted, testimony would not have contradicted other evidence that helped convict defendant, including two eyewitnesses who saw defendant with gun). The jury clearly found the testimony of the officers to be credible and, based on that testimony alone, "the jury could have rationally concluded that [Petitioner] was in possession of the gun that the officers found in the yard,"

*Common*, 563 F. App'x at 434, even if Brown had testified that she never shouted the words "he's got a gun."

Accordingly, Petitioner has failed to show a reasonable probability that the outcome of the trial would have been different had Brown and the 911 dispatcher testified. Accordingly, Petitioner is not entitled to relief on this ineffective assistance of counsel claim.

## 2. Ineffective Assistance—Appellate Counsel

Petitioner's second claim alleges that appellate counsel was ineffective by failing to provide the Sixth Circuit with photographs of the crime scene to support his argument that it was physically impossible for him to have thrown the firearm underhanded from the middle of the street to the tree line at the back of the property [Doc. 42 pp. 26–30]. Petitioner has attached the two photographs at issue to his motion [*Id*. pp. 33–34]. This claim also has no merit.

The right to the effective assistance of counsel includes appellate counsel as well as trial counsel, *Whiting v. Burt*, 395 F.3d 602, 616 (6th Cir. 2005), and the performance of appellate counsel is properly reviewed under the *Strickland* standard. *See Webb v. Mitchell*, 586 F.3d 383, 398 (6th Cir. 2009). Thus, in order to prevail on his claim of ineffective assistance of appellate counsel, Petitioner must demonstrate that his appellate counsel's performance fell below an objective standard of reasonableness and that, but for that deficient performance, there is a reasonable probability that the outcome of his appeal would have been different. *Cowans v. Bagley*, 639 F.3d 241, 252 (6th Cir. 2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Evans v. Hudson*, 575 F.3d 560, 564–65 (6th Cir. 2009) (citation omitted).

Petitioner's argument on direct appeal was that the testimony used to support his conviction was incredible as a matter of law because it is "physically impossible" to toss a handgun

underhanded from the middle of the street to the tree line at the back of the property 156 feet away.

The Sixth Circuit rejected this argument:

> Even if that is true, Common's argument is without merit because the officers did not testify that they saw Common toss the gun from the middle of the street, and they were not clear about where the gun was found. Instead, they testified that Common walked up to the edge of the yard before he tossed the gun. Common has not provided any evidence that it would be physically impossible to toss the gun from the edge of the yard to the tree line. Furthermore, Officer Bramlett testified that the gun was recovered only about ten feet away from the driveway. To the extent that the officers gave inconsistent testimony regarding the precise location of the gun, we must defer to the jury's credibility determination regarding which testimony to believe.

*Common*, 563 F. App'x at 433 (citations to record omitted).

Petitioner now argues that if appellate counsel had provided the Sixth Circuit with the photographs of the crime scene, they would have had "evidence that it would be physically impossible to toss the gun from the edge of the yard to the tree line" and reached a different conclusion.

However, as the Sixth Circuit noted, at least one officer testified that the weapon was found only ten feet away and, to the extent the testimony regarding the location of the gun was inconsistent, the court deferred to the jury's credibility determination. This is important, as Petitioner's argument on appeal, "[a]t its core, is a sufficiency-of-the-evidence claim." *Common*, 563 F. App'x at 432. In analyzing such a claim, an appellate court considers the evidence that was before the jury, and both of the photographs at issue were admitted as defense exhibits at Petitioner's trial [Doc. 23]. Thus, the *jury* saw the photographs and nevertheless still found the officers' testimony to be credible. Moreover, because the photographs were admitted at trial, they constituted part of the record on appeal. *See* Fed. R. App. P. 10(a)(1) (original papers and exhibits

filed in the district court, the transcript of proceedings, and a certified copy of the docket entries constitute the record on appeal).

Because the photographs would not have impacted the Sixth Circuit's sufficiency-of-the-evidence analysis, Petitioner cannot show that but for counsel's failure to provide those photographs, he would have prevailed on his appeal. Accordingly, Petitioner is not entitled to relief on this claim.

### 3. Due Process

Petitioner's third claim alleges that he was denied due process of law on direct appeal when the Sixth Circuit failed to follow both its own and Supreme Court precedent relating to disjunctive legal theories and general verdicts [Doc. 42 pp. 30–31]. The Court has no authority to consider this claim.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). The constitutional powers of the Judicial Branch are set forth in Article III, § 1, which states that the "judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." Significantly, "Article III 'gives the Federal Judiciary the power, not merely to rule on cases, but to decide them, *subject to review only by superior courts in the Article III hierarchy.*'" *Miller v. French*, 530 U.S. 327, 342 (2000) (*quoting Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218–19 (1995)) (emphasis added).

By statute, the courts of appeals have jurisdiction of appeals from all final decisions of the district courts, 28 U.S.C. § 1291, and the Supreme Court has jurisdiction to review cases from the courts of appeals, or, on occasion, from the district court. 28 U.S.C. § 1254. A district court,

however, has neither the constitutional nor the statutory prerogative to review a decision of a superior court. Accordingly, this Court has no authority to review a decision of the Sixth Circuit Court of Appeals. *See, e.g., Rattoballi v. United States*, No. 08 Civ. 8107 (TPG), 2008 WL 5351997 * 4 (S.D.N.Y. Dec. 19, 2008) (district court has no authority to vacate or amend a resentencing on basis that Court of Appeals applied an improper standard of review).

If Petitioner believed that the panel decision affirming his conviction conflicted with a decision of the United States Supreme Court or of the Sixth Circuit, he could have requested a rehearing by the court of appeals en banc. Fed. R. App. P. 35; 28 U.S.C. § 46(b). Otherwise, the decision was subject to review only by the Supreme Court upon a writ of certiorari or by certification of the court of appeals. 28 U.S.C. § 1254. Petitioner sought neither en banc review nor a petition for a writ of certiorari in this case, and, as already discussed, a § 2255 motion cannot be used to relitigate issues that were denied on direct appeal absent a showing of highly exceptional circumstances, or an intervening change in the law. *Wright*, 182 F.3d at 467; *DuPont*, 76 F.3d at 110. No exceptional circumstances are present here and Petitioner is not alleging a change in the law, but rather that the Court of Appeals improperly failed to follow existing law.

Accordingly, this Court has no authority to consider Petitioner's argument that the Sixth Circuit Court of Appeals deprived him of due process in failing to follow established precedent, and Petitioner is not entitled to relief on this claim.

### 4. *Johnson* Claim

Petitioner's final claim alleges that his prior Tennessee conviction for aggravated assault no longer qualifies as a "violent felony" under § 924(e) in light of *Johnson* and that, without that

conviction, he lacks the requisite three predicate convictions necessary to subject him to an ACCA enhancement [Docs. 51, 52].[2]  This claim is without merit.

As an initial matter, Petitioner's *Johnson* challenge is untimely.  Section 2255(f)(3) places a one-year period of limitation on all § 2255 motions running from the date on which the right asserted was initially recognized by the Supreme Court if that right has been newly recognized and made retroactively applicable to cases on collateral review.  Claims under *Johnson*, which announced a new "substantive rule that has retroactive effect in cases on collateral review," *Welch*, 136 S. Ct. at 1268, fall within § 2255(f)(3).  Accordingly, *Johnson* triggered a renewed one-year period of limitation beginning on the date of that decision, June 26, 2015, and running until June 26, 2016.  Here, Petitioner's supplement to his § 2255 motion asserting a *Johnson* claim was not filed until July 25, 2016 [Doc. 51], nearly a month outside of the one-year window for requesting collateral relief under *Johnson.*

In any event, *Johnson* has no bearing on Petitioner's classification as an armed career criminal.  In *Johnson*, the Supreme Court determined that the residual clause of the ACCA is unconstitutionally vague and concluded "that imposing an increased sentence under the residual clause . . . violates the Constitution's guarantee of due process."  135 S. Ct. at 2563.  *Johnson* did not automatically invalidate all ACCA sentences, however, emphasizing that its holding "d[id] not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony."  *Id.*; *see also United States v. Kemmerling*, 612 F. App'x 373,

---

[2] Petitioner does not, and cannot, dispute that his two prior aggravated robbery convictions continue to qualify as ACCA predicates.  *See United States v. Mitchell*, 743 F.3d 1054, 1058–60 (6th Cir. 2014) (any violation of Tennessee's robbery statute categorically requires the use, attempted use, or threatened use of violent physical force and is a predicate offense under the ACCA); *United States v. Lester*, 719 F. App'x 455, 458 (6th Cir. 2017) (Tennessee aggravated robbery is a "violent felony" under the use-of-force clause of the ACCA).

376 (6th Cir. 2015) (explicitly finding that *Johnson* did not affect the ACCA's use-of-physical-force clause). Thus, under *Johnson*, an ACCA sentence only raises a due process concern, and thus is invalid, if it necessarily was based on predicate violent felonies that qualified as such under the ACCA's residual clause.

Here, post-*Johnson*, Petitioner's conviction for aggravated assault under Tennessee Code Annotated § 39-13-102 remains a "violent felony" under the ACCA's "use-of-physical-force clause" because it "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i).

The Sixth Circuit has held that the Tennessee aggravated assault statute is a divisible statute because it "can be offended in a number of different ways." *United States v. Cooper*, 739 F.3d 873, 879 (6th Cir 2014). Accordingly, in determining whether Petitioner's conviction qualifies as an ACCA violent felony, the Court is to apply the modified categorical approach, which permits the Court to look at a "limited class of documents . . . to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." *Descamps v. United States*, 570 U.S. 254, 262 (2013); *United States v. Denson*, 728 F.3d 603, 612 (6th Cir. 2013).

Here, the relevant documents show that Petitioner was charged under § 39-13-102 with "unlawfully, intentionally or knowingly caus[ing] [the victim] to reasonably fear imminent bodily injury by use of a deadly weapon," and that he pled guilty to that offense, which is classified as a Class C felony [Doc. 53-1 pp 2–3]. These documents demonstrate that Petitioner necessarily pled guilty to aggravated assault under § 39-13-102(a)(1)(B), which at the time of Petitioner's offense, criminalized "intentionally or knowingly commit[ting] an assault" while "us[ing] or display[ing] a deadly weapon." The Sixth Circuit repeatedly has held that a violation of that subsection of the Tennessee aggravated assault statute remains a violent felony under the ACCA's use-of-force

clause post-*Johnson*. *Braden v. United States*, 817 F.3d 926, 932 (6th Cir. 2016); *Crowell v. United States*, No. 18-5203, 2018 WL 4190839 * 1 (6th Cir. 2018); *Ballinger v. United States*, No. 17-5261, 2017 WL 8180569 * 2 (6th Cir. 2017).

Because Petitioner's aggravated assault conviction still qualifies as a conviction for a violent felony within the meaning of the ACCA after *Johnson*, he is not entitled to relief on this claim.

## IV.    CONCLUSION

For the reasons set forth herein, Petitioner's § 2255 motion [Doc. 42], as supplemented [Docs. 51, 52], will be **DENIED**.

## V.    CERTIFICATE OF APPEALABILITY

Finally, the Court must consider whether to issue a certificate of appealability (COA) should Petitioner file a notice of appeal.  Under 28 U.S.C. § 2253(a) and (c)(1), a petitioner may appeal a final order in a § 2255 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c)(2).  Where a claim has been dismissed on the merits, a petitioner must show that reasonable jurists would find the assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right, as jurists of reason would not debate the Court's findings as to any of Petitioner's claims. Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA **SHALL NOT ISSUE**.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

_____ */s/ Harry S. Mattice, Jr.* _____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE